FILED
 2007 Jul-23  AM 11:42
 U.S. DISTRICT COURT
 N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | |
| ) | **Civil Action No. 05-S-0095-M** |
| **DAWSON DEVELOPMENT** ) | |
| **COMPANY, LLC, and MILBURN** ) | |
| **LONG,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION AND ORDER

This Fair Housing Act[1] racial discrimination case is before the court on the government's motion to disburse the proceeds of an "Aggrieved Persons' Fund," which was established last year pursuant to, and in accordance with, a consent decree between the United States of America, as plaintiff, and defendant Dawson Development Company, LLC ("Dawson").[2]  The fund consists of $32,700.00, plus all interest having accrued thereon.[3]

The government recommends distribution of all proceeds of the fund to four African American individuals — Rosemary, Beverly, Miesha, and Sheneka Bothwell

---

[1] *See* 42 U.S.C. § 3601 *et seq.*

[2] Doc. no. 41 (Motion to Disburse Funds); doc. no. 42 (Memorandum in Support of Motion to Disburse Funds).  *See also* doc. no. 17 (Consent Order), § VIII.

[3] Doc. no. 17, § VIII, ¶ 1.

— who were allegedly discriminated against on the basis of their race when attempting to rent a residential housing unit at Park Place Apartments in Boaz, Alabama during the summer of 2003.[4]  Dawson has filed an opposition to the government's motion, but rather than specifically addressing the merits of the suggested disbursement scheme, Dawson focuses its attack on alleged procedural irregularities in the review process, and requests either a hearing or an order striking the recommendation and allowing additional time for it to review the proposal.

As discussed below, the court is satisfied with the government's recommendation, and perceives no substantial flaw in the review and comment process.  Accordingly, the government's motion for disbursement of the funds will be granted.

## I. BACKGROUND

The consent order entered in this case on February 17, 2006 outlines the procedures for the pre-disbursement investigation and comment process as follows:

> 4.   The United States shall investigate the claims of the aggrieved persons and, within one hundred eighty (180) days from the entry of this Order, shall make a *preliminary determination* of which persons are aggrieved and an appropriate amount of damages that should be paid to each such person.  The United States will inform Defendant in writing of its preliminary determinations, together with a copy of a sworn declaration from each aggrieved person setting forth the factual basis of the claim.  The Defendant

---

[4] *See* doc. no. 41, p. 2.

>
> shall have thirty (30) days to review the declaration and provide any documents or information that it believes *may refute the claim* to the United States.
>
> 5. After receiving Defendant's comments, the United States shall submit its *final recommendations* to the Court *for approval*, identifying the aggrieved persons and an appropriate amount of damages that should be paid to each such person, together with a copy of the sworn declarations and any documents or information submitted by Defendant. Within ten (10) days of a Court order providing for the distribution of funds to aggrieved persons, Defendant shall deliver to counsel for the United States checks payable to the aggrieved persons in the amounts approved by the Court.[5]

In accordance with these provisions, the government investigated the claims of some number of individuals, and preliminarily determined that seven such persons were due compensation from the fund. By letter dated October 27, 2006, the government formally notified Dawson of its preliminary determination.[6] The text of the letter indicates that the government proposed disbursement of the entire $32,700.00, with individual payments proportioned as follows:

- Rosemary Bothwell:     $3,500.00
- Beverly Bothwell:      $3,500.00
- Shaneka Bothwell:      $4,850.00
- Miesha Bothwell:       $4,850.00
- Kristie Gauntt:        $7,000.00
- Nakisha Pyborn:        $7,000.00

---

[5] Doc. no. 17, § VIII, ¶¶ 4-5 (emphasis supplied).

[6] Doc. no. 42, Ex. 1 (Notice of Preliminary Determination).

- Timothy Humphrey: $2,000.00[7]

Each proposed claimant executed an affidavit in support of their claim, and all seven such affidavits were included with the correspondence communicating the government's preliminary determination.

Although technically Dawson was required to review the preliminary determination and submit any evidence tending to refute the claimants' claims within thirty days of the October 27 letter, the attorneys for the government apparently cooperated with opposing counsel and agreed to enlarge the time period for a response — and, accordingly, to defer submission of a final recommendation to the court — on several occasions.[8] Dawson finally responded to the preliminary determination by letter dated January 4, 2007.[9] While Dawson was "adamant that none of the claimants appear to have suffered damages that would be due to be compensated," its attorney conceded "that there is substantially more validity to the Bothwells' claims."[10] (The Bothwells, two African American college-age cousins and their respective mothers, claim Dawson wrongfully refused to rent the cousins an apartment at Park Place, even though the resident manager, Milburn Long, appears

---

[7] *Id*.

[8] *See* doc. nos. 37, 38, 39, 40 (Stipulations Extending Time for Filing of Final Recommendation).

[9] Doc. no. 42, Ex. 2 (Dawson's Response to Preliminary Determination).

[10] *Id*.

to have urged acceptance of their application.[11]) In view of this, counsel for Dawson offered to settle upon "the Bothwells being compensated a total sum of $6,000.00, which is equal to the annual rent due on an apartment at Park Place."[12]

The government responded to this letter *instanter*, agreeing to abandon any demand for compensation for Kristie Gauntt, Nakisha Pyborn, and Timothy Humphrey, but proposing a total of $19,000.00 in damages for the Bothwells.[13] To the extent that Dawson's attorney had questioned the legitimacy of the Bothwells' claims in the first letter, counsel for the government assured that, given the evidence, it only made sense "to infer that the Dawsons [*i.e.*, the individuals who operate Dawson Development] were responsible for the discrimination."[14] In any event, the government reminded counsel for Dawson that "the consent order in this case makes it clear that the Dawsons deny any responsibility for discriminatory acts, and that

---

[11] The circumstances surrounding the Bothwells' claims were discussed in much more detail in the court's memorandum opinion following the bench trial of the government's claims against the other defendant in this case, Milburn Long. *See* doc. no. 35 (Memorandum Opinion), pp. 6-11, 43-46. Accordingly, the court will pretermit any further discussion of those circumstances, except to point out that the discussion of the Bothwells' claims in that opinion was limited to the allegations that they were discriminated against by *Long*, whereas the government's recommendation here concerns compensation for the Bothwells to avenge discrimination by *Dawson*. Because the bench trial did not concern Dawson's role, the government explains that significant evidence connecting Dawson to the denial of the Bothwells' application was not offered to the court for consideration at that time, but nevertheless is sufficiently persuasive to justify compensation for racial discrimination.

[12] Doc. no. 42, Ex. 2.

[13] Doc. no. 44 (Reply in Support of Motion for Disbursement of Funds), Ex. 1 (Government's Letter to Counsel for Dawson).

[14] *Id.*


payment of any money is not an admission of liability."[15]

Negotiations continued, but the parties only moved further apart. On January 18, 2007 — the day prior to the agreed deadline for a final recommendation to the court — an attorney for the government emailed counsel for Dawson with the news that "we are now planning to file a pleading asking the judge to award the entire $32,700 to the Bothwells."[16] He requested permission to file a stipulation extending the time for submission of that pleading but, not surprisingly, Dawson's attorney refused to consent to the stipulation.[17]  Accordingly, the government rushed to complete the disbursement recommendation, filing it just after 8:00 p.m. on Friday, January 19, 2007.[18]

The government's final recommendation is that the funds be divvied up as follows:

- Beverly Bothwell (mother of Miesha):   $5,350.00
- Rosemary Bothwell (mother of Sheneka): $5,350.00
- Miesha Bothwell:   $14,000.00
- Sheneka Bothwell:   $8,000.00[19]

Although this disbursement scheme awards substantially more money to the

---

[15] *Id*.

[16] *Id*. at Ex. 3 (Email from Government).

[17] *Id*. at Ex. 4 (Email from Counsel for Dawson).

[18] *See* doc. no. 41.

[19] *Id*. at p. 2.

Bothwells than was called for by the preliminary determination, it is consistent with the government's original position in that it would disburse the entirety of the fund ($32,700.00) to the alleged victims of the discrimination. The government contends that eliminating the other claimants allows for damages in "an amount that more fully and fairly compensates" the Bothwells for the hardship they claim to have suffered.[20] The government argues that it is sensible to provide the least compensation to the parents, since the alleged discrimination caused them embarrassment and concern, but more directly affected the daughters, who were hoping to reside at Park Place; Miesha Bothwell is recommended for the highest award because, while both she and Sheneka were forced to live for one year at a less desirable and less safe apartment complex, Miesha resided in that locale for two years.[21]

In further support of the damages requested, the government has provided affidavits from each of the claimants in which they attest to their damages, and has cited similar cases in which commensurate awards were approved as compensation for actual damages.

## II. DISCUSSION

---

[20] Doc. no. 42, p. 2 n.2.

[21] *Id*. at pp. 4-6. Originally, both Miesha and Sheneka wished to rent an apartment at Park Place for two years, and the government is quick to point this out in assailing the reasonableness of Dawson's offer to compensate them in an amount that corresponds to only one year's rent at Park Place.

**A.     Dawson's Objections**

In opposing this disbursement recommendation, Dawson does not attempt to argue against the substantive merit of the Bothwells' claims, nor does it take issue with the wisdom of the proportioning itself.  Instead, it asserts that "[t]he manner in which these final recommendations were presented to this Court is in complete contravention of the spirit and stated procedure of the Consent Order entered in this matter."[22]  As will be explained, the court respectfully disagrees with this assessment.

Dawson first complains that the consent order "provided for [it] to have 30 days to respond to the *preliminary determinations* of damages from the United States."[23]  That is manifestly true, but the fact of the matter is that Dawson was allowed *more* than thirty days:  the government tendered its preliminary determination on October 27, 2006, and Dawson evidently did not file any opposition until January 4, 2007, over sixty days later.  Once Dawson's objections were lodged, the negotiation and review process contemplated by the consent decree commenced.

After some back and forth, the government actually abandoned any attempt to obtain compensation for three of the original claimants, and at one point even offered to consent to a $19,000.00 disbursement to the Bothwells, representing a $13,000.00

---

[22] Doc. no. 43, ¶ 8.

[23] *Id*. at ¶ 9 (emphasis supplied).

reduction in the original overall disbursement suggestion. Unfortunately for Dawson, perhaps because of its refusal to accede to any disbursement in excess of a mere $6,000.00, the government ultimately resolved to seek the full proceeds of the fund for the Bothwells. Although the government's vacillations were probably frustrating for Dawson, they were in no way violative of the terms of the consent decree, and in fact appear to have resulted, at least in part, from the joint negotiations that were envisioned by that order.

Next, Dawson argues that it "was denied an opportunity to respond to the proposed payments *finally offered* by the United States[,] as Dawson was not made aware of those proposed payments until the day before the United States filed its motion."[24] That assertion also is true, but the consent decree does not permit or require Dawson to review the government's *final* recommendation in advance of submission to the court. It merely provides that the government will allow Dawson to review its *preliminary* recommendation and await Dawson's objections, if any, before submitting a final recommendation, and will include any evidence proffered by Dawson in opposition to the claimants' claims along with that final recommendation.[25] The task of evaluating the government's final report is reserved

---

[24] *Id*. at ¶ 9 (emphasis supplied).
[25] *See* doc. no. 17, § VIII, ¶ 5.

for the court, and the court alone.

Finally, Dawson points out that "[t]he final proposed payments made by the United States are significantly higher and proportioned differently than the initial proposals. No new or additional information has been revealed by the United States that would explain or warrant such changes."[26] This assertion is only partially correct. While the final proposed *payments* to the Bothwells are higher (because the same amount of money is being distributed among fewer recipients), it is not accurate to say that no information has been proffered in support of the government's final proposal. On the contrary, the information in the record indicates that the government elected not to compensate three of the original claimants at least partially as a concession to Dawson — a concession that was motivated by the relative lack of proof of discrimination against those claimants. The government has determined, in the end, that the Bothwells presented the most meritorious claims, and has recommended that they be compensated accordingly. Although the Bothwells now stand to receive significantly more than they would have, had the government's preliminary determination been made final, that results merely from the fact that fewer claimants have been selected as eligible for disbursements.

**B.    The Government's Final Recommendation**

---

[26] Doc. no. 43, ¶ 9.

Having addressed these procedural objections, the court must evaluate the substantive merit of the government's recommendation.

To the extent that the actual evidence of discrimination is relevant, the court notes that the information on file lends support to the claim that the younger Bothwells were denied an apartment by Dawson on the basis of their race. The court has previously stated that it "believes that [Milburn] Long recommended the Bothwell[s'] application to Paige Dawson [of Dawson Development]."[27] There was some evidence presented at the bench trial of the Long matter "suggesting that Paige Dawson did not favor college students,"[28] but the government has now submitted records and deposition testimony indicating that Caucasian college students were accepted as tenants during the same time period that the Bothwells were rejected.[29] As a result, any reliance upon college student status as a legitimate, nondiscriminatory rationale for denial appears pretextual. *See*, *e.g.*, *HUD v. Blackwell*, 908 F.2d 864, 870 (11th Cir. 1990) (holding that the *McDonnell Douglas* burden-shifting framework governs Fair Housing Act racial discrimination claims). *See also*, *e.g.*, *Marable v. H. Walker & Associates*, 644 F.2d 390, 395 (5th Cir. May

---

[27] Doc. no. 35, p. 10 n.47.

[28] *Id*.

[29] *See* doc. no. 42, Ex. 4 (Excepts from Deposition of Milburn Long); *id*. at Ex. 5 (Tenant Directory); *id*. at Ex. 6 (Tidwell Lease); *id*. at Ex. 7 (Combs Lease); *id*. at Ex. 8 (Browning Lease).

1981) ("A plaintiff bringing a claim under the Fair Housing Act of 1968 . . . is not required to establish that his denial of housing was motivated *solely* by racial discrimination.") (emphasis supplied).[30]

There also is sufficient evidence of emotional distress to support the damages requested. As mentioned above, each of the Bothwells executed an affidavit explicating the ways in which they were harmed by the decision not to allow Miesha and Sheneka to live at Park Place.[31] The court has examined these declarations and is satisfied that the mental trauma and practical complications flowing from Dawson's refusal to rent them apartments at Park Place are fairly quantified and apportioned by the government's recommended awards. *Cf. Block v. R.H. Macy & Co.*, 712 F.2d 1241, 1245 (8th Cir. 1983) ("Because of the difficulty of evaluating the emotional injuries which result from deprivations of civil rights, courts do not demand precise proof to support a reasonable award of damages for such injuries.").

### III.  CONCLUSION AND ORDER

In view of the foregoing, there is no need for a hearing regarding this matter. Instead, the government's proposed disbursement scheme is APPROVED.

Pursuant to the terms of the consent decree, it is CONSIDERED, ORDERED,

---

[30] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[31] *See* doc. no. 42, Ex. 3 (Bothwell Affidavits).

and ADJUDGED that the following four individuals have and recover of defendant, Dawson Development Company, LLC, the following amounts, plus applicable percentages of accrued interest:

- Beverly Bothwell:       $5,350.00
- Rosemary Bothwell:   $5,350.00
- Miesha Bothwell:       $14,000.00
- Sheneka Bothwell:     $8,000.00

Counsel for Dawson shall ensure that checks payable to these persons, for the listed amounts plus applicable percentages of accrued interest, be delivered to counsel for the United States of America for distribution within ten days of the date of this order.

DONE and ORDERED this 23rd day of July, 2007.

_____
United States District Judge